UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

**REKITA BLACKMON**

    Plaintiff,

v.

**HABITAT FOR HUMANITY INT. and HABITAT FOR HUMANITY OF GREATER CHATTANOOGA, INC,**

    Defendants.

Case No.

Judge

Jury Demand

## COMPLAINT

Plaintiff Rekita Blackmon ("Plaintiff" or "Blackmon") files this lawsuit against Defendants Habitat for Humanity International and Habitat for Humanity of Greater Chattanooga (collectively "Defendants"), for employment discrimination based on race and gender and violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. 1981. Defendants engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights. Plaintiff seeks to recover compensatory and punitive damages from Defendants as allowed under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. 1981.

**PARTIES**

1. Plaintiff Rekita Blackmon is a citizen and resident of Chattanooga, Hamilton County, Tennessee, and a former employee of Habitat for Humanity.

2. Defendant Habitat for Humanity International is a nonprofit business organized and existing under the laws of the State of Georgia and licensed to do business in Tennessee.

1

Complaint

3. Defendant Habitat for Humanity International may be served with through its registered agent CORPORATE CREATIONS NETWORK INC. 205 POWELL PL BRENTWOOD, TN 37027-7522. (**Exhibit 1 – SOS Business Record**)

4. Defendant Habitat for Humanity of Greater Chattanooga is a nonprofit business organized and existing under the laws of the State of Tennessee.

5. Defendant Habitat for Humanity of Greater Chattanooga may be served with through its registered agent JENS CHRISTENSEN 1201 E MAIN STREET CHATTANOOGA, TN 37408-1613. (**Exhibit 2 – SOS Business Record**)

6. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of 42 U.S.C.S. § 2000e(b).

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §1331 as this civil action involving a federal question.

8. Venue is proper under 28 U.S.C. §1391.

9. Plaintiff has met all conditions precedent to the filing of this complaint. Plaintiff timely filed a charge of discrimination with the U.S. Equal Opportunity Commission as to her Title VII claims on February 27, 2023. (**Exhibit 3 – Charge of Discrimination**).

10. Plaintiff received her right to sue notice on July 25, 2024, and this Complaint is timely filed within 90 days. (**Exhibit 4 – Right to Sue**).

## FACTUAL ALLEGATIONS

11. Plaintiff was hired as an Associate by Defendant on August 19, 2021.

12. Plaintiff was then promoted less than a year later to Store Manager in February 2022.

13. Plaintiff primarily managed a ReStore store in Ooltewah, Tennessee.

14. During her time as Manager, Plaintiff witnessed her supervisors, Ms. Marcia Hayes (Ops. Mgr.)("Hayes") and Ms. Tenasa McGhee (CAO)("McGee"), repeatedly sexually harass one of her employees, Mr. Perrin Johnson, an African American male.

15. Plaintiff complained about this behavior many times to CEO Jens Christensen ("Christensen.")

16. Johnson began working for Defendants around May 2022.

17. Hayes called Plaintiff in on her day off to help with onboarding Johnson.

18. During the onboarding process, Plaintiff heard Hayes ask Johnson if he was married approximately three times.

19. Plaintiff witnessed Hayes commenting on Plaintiff's smile and giving him other similar comments.

20. Plaintiff also witnessed sexual harassment from McGhee.

21. McGhee frequently stopped by Johnson and Plaintiff's work location.

22. During one such visit, Plaintiff witnessed McGhee sit down and spread her legs in such a way as to revel her undergarments to Johnson.

23. McGhee then invited Johnson toward her exposed crotch.

24. Plaintiff witnessed McGhee touch Johnson on his arms and shoulders while she was talking to him.

25. Plaintiff witnessed McGhee telling Johnson he needed to get in touch with his feminine side and compared him to the Hulk.

26. In June of 2022, Plaintiff caught McGhee "massaging" Johnson's shoulders in McGhee's office.

27. Plaintiff needed to break a hundred and came into the office where the cash safe was.

28. Plaintiff asked Johnson if he was okay.

29. Johnson told her he was not okay.

30. Later that day, Johnson asked Plaintiff to never leave him alone in an office with her again.

31. In July 2022, McGhee asked Plaintiff to take photos of Johnson for the website.

32. Plaintiff sent the headshots to McGhee.

33. McGhee was not satisfied with the pictures and asked for more.

34. McGhee told Plaintiff that Johnson was a member of the "silver fox club."

35. None of the photos Plaintiff took of Johnson appeared on the website.

36. McGee also made sexually offensive comments to Plaintiff.

37. McGee asked Plaintiff if she was sleeping with one of her employees, Lawrence Dees.

38. Hayes also sexually harassed Plaintiff and committed other acts of gender discrimination.

39. Hayes commented on Plaintiff's weight and eating habits.

40. While at a work conference, Plaintiff and Hayes were required to share a hotel room.

41. While Plaintiff was in the shower, Hayes ordered her to get out of the shower so she could use the bathroom.

42. Hayes gave Plaintiff a towel that was too small and made Plaintiff attempt to cover herself with this towel.

43. Hayes then commented on Plaintiff's underwear.

44. Plaintiff reported this to Christensen and McGhee, and they laughed at her.

45. Plaintiff left the hotel and stayed at a cousin's house until late at night when she was told she had to return to the hotel.

46. McGhee and Hayes treated Plaintiff differently than the other Caucasian employees.

47. On January 17. 2023, Plaintiff made a complaint to Habitat for Humanity's Board of Directors, notifying them of the ongoing sexual harassment and discrimination perpetuated by her supervisors.

48. On this same day, Ms. Blackmon notified Habitat for Humanity International with the same allegations of race and sex discrimination and sexual harassment.

49. On January 19, 2023, both McGhee and Hayes threatened Plaintiff to stop complaining to the Board and to fire Mr. Johnson.

50. McGhee and Hayes instructed Blackmon to terminate Johnson after Plaintiff filed her complaint, allegedly due to him having an out of state license and not being able to be on Habitat's insurance.

51. McGee and Hayes told her to fire him "or else."

52. This demand was retaliatory and the excuse pretextual.

53. Another white employee who was on Habitat insurance and drove the trucks was in possession of an out of state license, without repercussion.

54. Ultimately, on January 25, 2023, Johnson was terminated by the CEO.

55. On January 30, 2023, Defendants performed an informal investigation, no witnesses were questioned, and the staff was just asked if everything is "running ok."

56. On February 15, 2023, Ms. Blackmon was informed that the investigation into her complaint was closed and, instead, she was being written up for a violation of the confidentiality policy,

an issue with a bank deposit, and register audit.

57. To date, Ms. Blackmon has never been informed of the facts regarding the confidentiality violation.

58. At no point in time was she formally interviewed regarding her complaint, nor provided an opportunity to respond to the allegations of the bank deposit issue, the confidentiality violation, or the register audit.

59. Due to this retaliation, Ms. Blackmon filed an EEOC charge on February 27.

60. A few days later, she allowed Mr. Johnson to come on the premises to retrieve his personal items, after she received instructions to return his things to him.

61. Ms. Blackmon was unable to carry Mr. Johnson's things, so he had to come in to obtain them.

62. On May 13, 2023, Ms. Blackmon was terminated and subsequently banned for life from the Chattanooga area Restore stores.

63. Defendants have not banned similarly situated white former employees.

64. Habitat then replaced Plaintiff with a white male.

65. Since her termination, Plaintiff continues to receive harassing phone calls from Hayes.

66. Plaintiff was not able to retrieve her personal items.

### HOUR AND WAGE ISSUES

67. Plaintiff was paid hourly.

68. White store managers were given a salary.

69. Defendants routinely violated wage and hour laws.

70. Defendants told Plaintiff that they would not pay any overtime.

71. Defendants routinely rolled back employee time over 40 hours.

72. Defendants would not pay any wages to Plaintiff for work she performed on the weekend.

73. If an alarm went off at the store, Plaintiff would be asked to go to the store to turn off the alarm without pay.

74. Employee Lawrence Dees complained about Overtime on or around March 13, 2022.

75. Defendants told Plaintiff to fire him on May 13, 2022.

76. Defendants gave Plaintiff a set of backdated I9 forms and asked her to have her staff sign them.

77. Plaintiff refused and had her employees sign I9s with the proper date.

## CAUSES OF ACTION

## COUNT I: TITLE VII SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

78. Plaintiff faced discrimination based on sex in the form of ongoing sexual harassment.

79. Plaintiff was consistently subjected to unwelcome verbal conduct of a sexual nature by her supervisors.

80. The harassment took place during work hours.

81. Plaintiff was subjected to unwanted comments.

82. The unwanted comments created a hostile work environment and constituted sexual harassment.

83. Plaintiff witnessed Defendants abuse Perrin Johnson with multiple acts of unwanted comments and sexual touching.

84. Plaintiff complained about this behavior to her superiors.

## COUNT II: TITLE VII RETALIATION

85. Plaintiff reported the sexual harassment of herself and Johnson to Christensen and Defendants' board of directors.

86. Plaintiff participated in protected activity by reporting sexual harassment and participating in the company's subsequent investigation.

87. Defendants retaliated against Plaintiff for engaging in protected activity by terminated her employment and banning her from the store for life.

88. Plaintiff suffered adverse employment actions including, but not limited to changes in terms and conditions of employment, change in job duties and opportunities, a performance improvement plan, and termination

89. Defendant's putative non-retaliatory justification for taking these actions is mere pretext intended to hide Defendants' unlawful retaliatory motive.

90. Defendants' adverse actions were willful.

**COUNT III – TITLE VII AND 1981 RACE DISCRIMINATION**

91. Plaintiff as a black female was subjected to intersectional discrimination.

92. Plaintiff as a black female was subjected to different terms and conditions of employment than white employees.

93. Defendants held Plaintiff to a performance standard that was higher than the standard to which they held white employees.

94. Defendants placed scrutiny on Plaintiff that they did not place on white employees.

**COUNT IV – OVERTIME VIOLATIONS UNDER THE FAIR LABOR STANDARDS ACT.**

95. Plaintiff was paid an hourly wage.

96. Plaintiff was a non-exempt employee under the FLSA.

97. Plaintiff was entitled to time and half her regular rate of pay for all hours worked over forty hours in a week.

98. Plaintiff was told overtime would not be paid.

99. Defendants were aware that Plaintiff was working in excess of the hours reported.

100. When employee Lawrence Dees complained about not getting overtime, Defendants retaliated against him by telling Plaintiff to fire him.

101. Defendants retaliated against Plaintiff when she objected to firing him.

102. Hayes and McGee physically intimidated her and yelled at her, forcing her to tell Dees he was fired.

103. Defendants failed to compensate Plaintiff for those hours worked over forty hours in a week.

104. Plaintiff is entitled to those unpaid wages and an equal amount in liquidated damages.

105. Defendant's violations were willful and not in good faith.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays that he be granted the following relief:

1. Enter judgment against Defendant, declare that the actions of Defendant violate Title VII and 42 U.SC. 1981, and enjoin Defendant from further discriminatory or retaliatory practices;

2. Order Defendant to pay Plaintiff back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct, including an appropriate amount to offset increased tax consequences of any lump sum payment;

3. Order Defendant to pay Plaintiff front pay and the value of future lost benefits;

9

Complaint

Case 1:24-cv-00341-TRM-CHS   Document 1   Filed 10/23/24   Page 9 of 10   PageID #: 9

4. Order Defendant to pay Plaintiff compensatory damages in an amount to be determined by a jury;

5. Order Defendant to pay Plaintiff punitive damages in an amount to be determined by a jury;

6. Order Defendant to pay all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees as allowed by law;

7. Grant Plaintiff all such further relief as she is entitled to under law and/or as the Court deems just and proper; and

8. Plaintiff requests a jury trial in this case.

THE PLAINTIFF'S DEMAND A TRIAL BY JURY.

/s/ David Weatherman
David Weatherman (TBPR 29446)
**THE WEATHERMAN FIRM**
256 Seaboard Lane, Suite E105
Franklin, TN 37067
Phone: 615-538-7555
David@TheWeathermanFirm.com

/s/ Daniel E. Arciniegas
Daniel E. Arciniegas (TBPR 35853)
**ARCINIEGAS LAW**
256 Seaboard Lane, Suite E105
Franklin, TN 37067
Phone: 629-777-5889
Daniel@AttorneyDaniel.com
AttorneyDaniel.com

***Attorneys for Plaintiffs***